**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br>vs.<br>RALPH INZUNZA,<br><br>   Defendant. | CASE NO. 03cr2434 JM<br><br>**ORDER DENYING<br>MOTION FOR NEW TRIAL** |

Defendant Ralph Inzunza moves to have this court certify to the Ninth Circuit its intention to grant his most recently filed motion for new trial. The Government opposes the motion. For the reasons set forth below, the court denies the motion for new trial and therefore declines to certify to the Ninth Circuit that it would entertain the motion for new trial.

**BACKGROUND**

On November 10, 2005 the court denied Defendant's motion for a new trial.[1] Defendant now claims that newly discovered evidence warrants the grant of a new trial motion. Specifically, Defendant claims that the Government failed to disclose impeaching and exculpatory material relating to Michael Galardi, Nevita Thompson and John D'Intino and to correct Galardi's alleged perjury (or suspected alleged perjury) in violation of its obligations under Brady v. Maryland. Defendant also

---

[1] The court incorporates the orders entered on November 10, 2005 as if fully set forth herein. (Docket Nos. 550 and 551).

argues that post-trial statements of co-defendants Malone and Zucchet constitute newly discovered evidence warranting relief under Rule 33. Each argument is discussed in turn.

## DISCUSSION

**Jurisdiction**

"The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Trulis v. Barton, 107 F.3d 685, 694-95 (9th Cir. 1995). " The District Court ha[s] jurisdiction to entertain the motion [for new trial] and either deny the motion on its merits or certify its intention to grant the motion to the Court of Appeals, which c[an] then entertain a motion to remand the case." United States v. Cronic, 466 U.S. 648, 667 n.42 (1984).

Here, as set forth below, the court denies the motion for new trial on the merits. Accordingly, the court declines to issue a certification to the Ninth Circuit for purposes of remanding the case to district court.

**The Motion for New Trial**

A motion for new trial based on newly discovered evidence must be made within three years after verdict. If an appeal is pending, the district court may deny a motion for new trial but it cannot grant the motion unless the case is remanded by the Court of Appeals. Fed.R.Crim.P. 33(b)(1).

Under Rule 33(a) the court has broad authority to grant a motion for new trial whenever "the interest of justice so requires." Fed.R.Crim.P. 33(a); United States v. Young, 17 F.3d 1201, 1205 (9th Cir. 1994). The court considers the following five-part test to determine whether to grant a new trial based on newly discovered evidence: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendants part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal. Untied States v. Sarno, 73 F.3d 1470, 1507 (9th Cir. 1995).

Where the Government knowingly uses perjured testimony, the standard is whether "there is any reasonable likelihood that the false testimony could have affected the jury verdict." United States v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989). In the absence of a showing that the Government

argues that post-trial statements of co-defendants Malone and Zucchet constitute newly discovered evidence warranting relief under Rule 33. Each argument is discussed in turn.

argues
argues that post-trial statements of co-defendants Malone and Zucchet constitute newly discovered evidence warranting relief under Rule 33. Each argument is discussed in turn.

## DISCUSSION

**Jurisdiction**

"The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Trulis v. Barton, 107 F.3d 685, 694-95 (9th Cir. 1995). " The District Court ha[s] jurisdiction to entertain the motion [for new trial] and either deny the motion on its merits or certify its intention to grant the motion to the Court of Appeals, which c[an] then entertain a motion to remand the case." United States v. Cronic, 466 U.S. 648, 667 n.42 (1984).

Here, as set forth below, the court denies the motion for new trial on the merits. Accordingly, the court declines to issue a certification to the Ninth Circuit for purposes of remanding the case to district court.

**The Motion for New Trial**

A motion for new trial based on newly discovered evidence must be made within three years after verdict. If an appeal is pending, the district court may deny a motion for new trial but it cannot grant the motion unless the case is remanded by the Court of Appeals. Fed.R.Crim.P. 33(b)(1).

Under Rule 33(a) the court has broad authority to grant a motion for new trial whenever "the interest of justice so requires." Fed.R.Crim.P. 33(a); United States v. Young, 17 F.3d 1201, 1205 (9th Cir. 1994). The court considers the following five-part test to determine whether to grant a new trial based on newly discovered evidence: (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of a lack of diligence on the defendants part; (3) the evidence must be material to the issues at trial; (4) the evidence must be neither cumulative nor merely impeaching; and (5) the evidence must indicate that a new trial would probably result in acquittal. Untied States v. Sarno, 73 F.3d 1470, 1507 (9th Cir. 1995).

Where the Government knowingly uses perjured testimony, the standard is whether "there is any reasonable likelihood that the false testimony could have affected the jury verdict." United States v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989). In the absence of a showing that the Government

knowingly used perjured testimony, "the correct standard for granting a new trial when newly discovered evidence reveals that a Government witness committed perjury during the trial" is that the evidence probably would result in an acquittal. Untied States v. Krasny, 607 F.2d 840, 842 (9th Cir. 1979).

THE GALARDI ISSUES

The O'Melveny & Meyers Memoranda: About one year ago, on March 28, 2006, the Government disclosed two memoranda written by an attorney at the law firm of O'Melveny & Meyers ("O & M"), dated June 28, 2003 and August 4, 2003. The memoranda, discovered post-trial by the Government, were drafted by an attorney at O & M and summarized meetings between Galardi and his attorneys.[2]

Defendant now claims that this newly discovered document shows that the Government failed to comply with its Brady obligations. Defendant identifies about four exculpatory statements contained in, or omitted from, the memoranda: (1) the payments to councilmen were "pure campaign contributions;" (2) Galardi reviewed seized business cards with his counsel; (3) Galardi "cheated on his taxes;" and (4) the memoranda did not mention the $10,000 cash payment to the councilmen.

To the extent Defendant argues that these alleged misstatements or omissions constitute newly discovered evidence warranting a new trial, Defendant falls far short of showing that disclosure of the memoranda would have changed the outcome at trial. Applying the five-part test identified in Sarno, (1) the document is not newly discovered because Defendant has had possession of this document for almost a year; (2) the document could not have been discovered prior to March 23, 2006; (3) the document bears on the credibility of Michael Galardi; (4) the evidence is cumulative, as more fully described below; and (5), in light of the cumulative nature of the evidence, there is no reasonable likelihood that the jury would have returned a different verdict if the evidence had been admitted.

///

---

[2] The Government explains that in February 2006 it learned for the first time that the Department of Justice's Office of Inspector General ("OIG") in Los Angeles, and the Public Integrity Section in Washington, D.C., had copies of several documents prepared by Galardi's attorneys. According to the Government, on or about October 29, 2004, Tom Waddell provided the OIG with copies of documents prepared by Galardi's attorneys. The documents were placed under seal and remained there until their discovery in 2006. (Government's Notification at p.3:4-20).

The additional impeachment value of any statement or omission contained in the memoranda is minimal given that the focus of defense counsel at the time of trial consisted of a lengthy and extensive attack on Galardi's credibility. Over the course of several days the jury heard testimony that Galardi characterized the payments as both "bribes" and/or "campaign contributions." (FBI - 302, 5/19/03; FBI - 302, 7/15/03; GX 15; GX 82). Moreover, as acknowledged by the parties, one predominant overriding issue at the time of trial concerned the monies provided to the councilmen. The parties submitted substantial evidence and argument on whether the monies constituted legitimate campaign contributions or, alternatively, quid pro quo payments.

With respect to the issue of AUSA Eric Johnson and Galardi's possession of his business card, the court notes that this topic was the subject of several pre-trial motions and trial testimony wherein Galardi was subjected to cross-examination about AUSA Johnson and his business card. With respect to the statement that Galardi said "he has definitely cheated on his taxes," the court notes that substantial evidence of "tax cheating" was presented at the time of trial. Evidence indicated that Galardi did not report the income from certain cash registers, tip income was under reported, and he structured a $400,000 cash transaction. Finally, the fact that the memoranda did not mention the $10,000 cash given by Galardi for payment to the councilmen, as Galardi later testified to, does not establish that he did, or did not, provide $10,000 to the councilmen. At the time of trial, Galardi was extensively cross-examined regarding this $10,000 payment, including the dubious circumstances under which Galardi "recalled" giving Malone $10,000 cash.[3]

Further, given the centrality of Galardi's credibility to his testimony, the court notes that the jury was specifically instructed to view the testimony of Galardi and Nevita Thompson with "greater

---

[3] Even assuming that Defendant may properly raise a Brady claim in the context of a motion for new trial based upon newly discovered evidence, Defendant fails to establish that such cumulative evidence is material. See United States v. Agurs, 427 U.S. 97, 104 (1976). ("A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial."). Evidence is material if there is a reasonable probability that its proper disclosure would have led to a different result at trial. See Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). Here, the cumulative impact of all the alleged "newly discovered" evidence, see id, including the two memoranda, would not have materially affected the outcome of the trial because (1) the evidence Defendant now seeks to introduce is substantially cumulative to the evidence presented at the time of trial, and (2) the Government's primary theory at trial was that the $10,000 cash was given to Malone and then to defendant Zucchet, not defendant Inzunza. As set forth in United States v. Alvarez, 358 F.3d 1194, 1196 (9th Cir. 2004), cumulative evidence is not material under Brady.

1  caution than that of other witnesses." 9th Cir. Crim. Jury Instr. 4.9 (2003).  In light of the cumulative
2  evidentiary value of the memoranda, Defendant is not entitled to a new trial.
3      In sum, the newly discovered evidence is cumulative of that which was presented to the jury,
4  so there is no reasonable probability the withheld evidence would have affected the outcome.
5      <u>Galardi's Alleged Perjury</u>
6      Defendant argues that Galardi presented perjured testimony when he testified about business
7  cards in his possession.  Defendant contends that the memoranda mentions that Galardi reviewed
8  certain business cards with his attorneys but testified at trial to the effect that the FBI did not find any
9  of his business cards.  Defendant attributes the difference between the two statements to perjured
10 testimony.
11     Defendant's argument is not persuasive.  Defendant does not satisfy his burden by pointing
12 to inconsistencies in statements and attributing the difference to perjury.  With respect to the business
13 card of AUSA Johnson, this was, as noted above, a subject of substantial pretrial motions and
14 examination of Galardi.  The court notes that the context provided by Defendant to assess this issue
15 falls far short of establishing that the Government intentionally, recklessly, or negligently submitted
16 perjured testimony to the jury.
17     In sum, Defendant fails to establish that he is entitled to a new trial based upon Galardi's
18 alleged perjured testimony.
19     <u>THE D'INTINO ISSUES</u>
20     Defendant contends that the Government failed to disclose that a non-testifying potential
21 witness and co-defendant, John D'Intino, made an undisclosed statement during his debriefing that
22 the monies paid to the councilmen were "campaign contributions" in violation of its obligations under
23 <u>Brady</u>.  As with the statements and omissions contained in the memoranda, this evidence is
24 substantially cumulative. At trial, the monies given to the councilmen were frequently characterized
25 as "campaign contributions."  Moreover, the statement seen in context, is not exculpatory.  In his
26 debriefing, D'Intino used the term "campaign contributions" when referring to the monies provided
27 by Galardi to the councilmen.  He also stated that the money was used to reimburse straw contributors
28 who wrote individual campaign contributions in order to disguise the true source of the money.

1  Accordingly, viewed in context, this evidence does not tend to exculpate Defendant.

2  In sum, Defendant fails to establish that he is entitled to a new trial based upon the statements
3  of D'Intino.

4  <u>THE THOMPSON ISSUES</u>

5  In November 2005, Defendant learned that co-defendant Malone had secretly tape recorded
6  a conversations with Nevita Thomson. Defendant contends that the secretly recorded conversations
7  contain statements undermining her testimony at the time of trial. Defendant also argues that the
8  Government failed to produce in discovery any "reports or notes of the interviews of Thomson" and
9  now requests that the court order such documents to be provided for <u>in camera</u> review. (Motion at
10  p.20:23-24).

11  The court notes that the recorded conversation does not support Defendant's argument that
12  Galardi and Thompson lied about the $10,000. In the conversation Malone confronts Thompson
13  saying, "Where did the $10,000 come from? Because you know damn well Mike didn't give me
14  10,000." (Motion Exh. B, p. 17). Thompson responds by saying "I'm not lying about this." She then
15  explains that she saw Galardi with the money and that Galardi told her that it was for the councilmen."
16  <u>Id.</u> This statement, seen in context, fails to impeach her trial testimony that she saw Galardi give
17  Malone an envelope containing what she believed was $10,000.

18  Further, applying the five part test identified in <u>Sarno</u>, the court concludes that this evidence
19  is not newly discovered as the evidence has been in Defendant's possession for about 16 months, it
20  is unclear whether Defendant ever attempted to interview Thompson prior to trial, the evidence does
21  not impeach Thompson's trial testimony to the effect that Galardi gave Malone $10,000 in cash, and
22  this evidence, either individually or collectively with the other alleged evidentiary failings, would not
23  likely have altered the jury's determinations.

24  In sum, Defendant fails to establish that he is entitled to a new trial based upon the statements
25  or testimony of Thompson.

26  / / /
27  / / /
28  / / /

### NEW MALONE EVIDENCE

Defendant contends that the self-serving declaration filed by co-defendant Malone in support of Inzunza's claims constitutes newly discovered evidence. The Malone declaration generally asserts that Malone did not bribe either Inzunza or Zucchet, and that they never promised him anything in exchange for campaign contributions.

Here, the Malone evidence is not newly discovered. In April 2005 Defendant sought severance on the ground that Malone, as set forth in the declaration, would testify that he did not bribe Defendant. In the declaration, Malone stated that he would testify for the councilmen if he were tried first or if he was given immunity. (Docket Nos. 308, 309). Moreover, the type of post-sentence statement provided by Malone is unreliable, untrustworthy, and of little evidentiary value. The Ninth Circuit has adopted the view that "when a defendant who has chosen not to testify subsequently comes forward to offer testimony exculpating a co-defendant, the evidence is not 'newly discovered.'" United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992) (quoting United States v. Diggs, 649 F.2d 731, 739 (9th Cir.), cert. denied, 454 U.S. 970 (1981).

In sum, as this evidence is not newly discovered, the court denies the motion for new trial.

### NEW ZUCCHET EVIDENCE

On or about October 15, 2005 co-defendant Zucchet submitted a post-trial self-serving declaration indicating that he first learned about Malone's legislative goal on February 10, 2003. Zucchet declares that Defendant Inzunza never asked him to do anything on behalf of Malone or his legislative goal. (Zucchet Decl. ¶¶3-4). This evidence, Defendant concludes, "impeach[es] and materially undermines the government's unusual quid pro quo theory." (Motion at p.25:5).[4]

The court concludes that this is not newly discovered evidence. Defendant has known about this evidence for over 17 months yet failed to move for relief earlier or demonstrate reasonable diligence in pursuing this claim. While impeachment evidence is material, the proffered evidence contradicts Zucchet's earlier statements to the FBI. On May 14, 2003 Zucchet informed the FBI that he met Malone at a fundraiser in San Diego. Before the fundraiser Inzuna informed Zucchet that

---

[4] While the court neither read nor considered Zucchet's self-serving declaration in connection with Zucchet's post-trial motions for acquittal and/or new trial as it was not part of the evidence introduced at trial, the court has considered the declaration for purposes of the instant motion for new trial.

1  Malone was a lobbyist associated with the nude entertainment industry and that Malone desired to
2  soften the laws regulating what the "girls can and cannot do." (Gov't Exh. 2). In light of the
3  evidentiary record, the proffered evidence does not indicate that Inzunza would reasonably be
4  acquitted.
5      In sum, the court denies the motion for new trial based upon the individual or collective
6  grounds raised by Defendant and declines to certify to the Ninth Circuit that it would entertain a
7  motion for new trial.
8      **IT IS SO ORDERED.**
9  DATED: April 2, 2007
10
11                              Hon. Jeffrey T. Miller
                            United States District Judge
12  cc: All Parties